IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BMO HARRIS BANK N.A., a national    §
banking association,                §
                                    §
            Plaintiff,              §
                                    §
v.                                  §        No. 3:18-cv-3028-K
                                    §
DONALD VANOVER,                     §
                                    §
            Defendant.              §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff BMO Harris Bank N.A. filed a Motion for Default Entry of Judgment [Dkt. No. 9] against Defendant Donald Vanover. *See* Dkt. No. 9. United States District Judge Ed Kinkeade referred the motion to the undersigned United States magistrate judge. *See* Dkt. No. 10.

For the reasons set forth below, the Court should grant in part and deny in part Plaintiff's Motion for Default Entry of Judgment [Dkt. No. 9].

**Background**

Defendant Donald Vanover is the President of Vanover Trucking, Inc. (hereinafter "VT, Inc."). *See* Dkt. No. 1, Ex. A at 6. VT, Inc. entered into three loan agreements with General Electric Capital Corporation ("GECC") to finance the purchase of equipment: the first on November 16, 2012, for $291,895.92, *see* Dkt. No. 1, Ex. A; the second on December 7, 2012, for $88,566.48, *see* Dkt. No. 1, Ex. B; and the

-1-

third on December 7, 2012, for $221,946.48, *see* Dkt. No. 1, Ex. C. Vanover signed an agreement with GECC to act as the "grantor, unconditionally guaranteed all past, present, and future performance of Borrower under the Agreements by executing Continuing Guarantees." Dkt. No. 1 at 3; *see also* Dkt. No. 1, Ex. D.

Plaintiff BMO Harris Bank N.A. asserts that Vanover "default[ed] under the terms of the Guaranties for his failure to pay the amounts due under the Agreements and the Guaranties." Dkt. No. 1 at 3. BMO further alleges that VT, Inc. and Vanover "fail[ed] to make payments on or about September 1, 2015, ... and [has] failed to make subsequent payments...." *Id*. "As of the date of default, the principal amount due and owning ... after acceleration totaled not less than $313,960.33." *Id*. at 4.

As of December 2015, GECC transferred and assigned all of its rights to BMO. *See id*. at 3.

At some time prior to the subsequent lawsuit, BMO "recovered possession of the Collateral ... and sold the Collateral in a commercially reasonable manner and applied the net proceeds to the amounts due under the Agreements." Dkt. No. 1 at 5.

Having recouped some lost revenue on the sale of the Collateral, on May 7, 2018, BMO filed suit for breach of contract against VT, Inc. *See BMO Harris N.A. v. Vanover Trucking, Inc.*, 3:18-cv-1156-N, Dkt. No. 1. In that lawsuit, VT, Inc. was served but failed to appear before the court or respond to any pleadings. *See id*., Dkt. No. 5. BMO filed a request for the Clerk of the Court to issue a Entry of Default, *see id*., Dkt. No. 7, which the Clerk did, *see id*., Dkt. No. 8. BMO then filed a Motion for Default

Judgment. *See id.*, Dkt. No. 9. On September 9, 2018, the Court issued a final judgment in favor of BMO against VT, Inc. for "the principal amount of $376,205.78, plus $4,746.00 for reasonable and necessary attorneys' fees, for a total amount of $380,951.78." *Id.*, Dkt No. 10. The court ordered that "[i]nterest shall accrue on the principal judgment amount at the rate of 2.47% per annum from the date of [the] Order." *Id.*

Less than two months later, BMO filed in this case the same breach of contract claim against Donald Vanover – the guarantor of "all past, present, and future performance of [VT, Inc.] under the Agreements," established in the "Continuing Guaranties." Dkt. No. 1 at 3.

Near the time of filing, "as of October 17, 2018, the amount due and owning under the Agreements, after crediting [Vanover] with the new sale proceeds of the Collateral but not including attorney's fees, [was] an amount not less than $384,147.00." *Id.* at 5.

Vanover – like VT, Inc. – was served but failed to appear before the court or respond to any pleadings. *See* Dkt. No. 5. BMO filed a request for the Clerk of the Court to issue a Entry of Default, *see* Dkt. No. 6, which the Clerk did, *see id.*, Dkt. No. 7.

BMO now seeks a final default judgment against Vanover. *See* Dkt. No. 9.

## Legal Standards

A party is entitled to entry of a default by the Clerk of the Court if the opposing

party fails to plead or otherwise defend as required by law. *See* FED. R. CIV. P. 55(a).

As now-Chief Judge Barbara M. G. Lynn has explained,

> Rule 55(b)(2) of the Federal Rules of Civil Procedure governs applications to the Court for default judgment. *See* FED. R. CIV. P. 55(b)(2). A default judgment is available as long as the plaintiff establishes: (1) defendant has been served with the summons and complaint and default was entered for its failure to appear; (2) defendant is neither a minor nor an incompetent person; (3) defendant is not in military service or not otherwise subject to the Soldiers and Sailors Relief Act of 1940; and (4) if defendant has appeared in the action, that defendant was provided with notice of the application for default judgment at least three days prior to the hearing. *See, e.g.*, 50 App. U.S.C. § 521; FED. R. CIV. P. 55; *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1070 (D. Ariz. 2006).

> In the Fifth Circuit, three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment by the district court. *New York Life Ins. Co. v. Brown,* 84 F.3d 137, 141 (5th Cir. 1996). A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure. *Id.* The clerk will enter default when default is established by an affidavit or otherwise. *Id.* After the clerk's entry of default, a plaintiff may apply to the district court for a judgment based on such default. *Id.*

> The [United States Court of Appeals for the] Fifth Circuit favors resolving cases on their merits and generally disfavors default judgments. *Rogers v. Hartford Life & Accident Ins. Co.,* 167 F.3d 933, 936 (5th Cir. 1999); *see also Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n,* 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the federal rules and resorted to by the courts only in extreme situations."). This policy, however, is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Rogers*, 167 F.3d at 936 (quoting *Pelican Prod. Corp. v. Marino,* 893 F.2d 1143, 1146 (10th Cir. 1990) (internal quotations omitted)); *see also Merrill Lynch Mortg. Corp. v. Narayan,* 908 F.2d 246, 253 (7th Cir. 1990) (noting that default judgments allow courts to manage their dockets "efficiently and effectively").

> When making a determination as to whether or not to enter a default judgment, district courts are to consider the following factors: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) harshness of default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion. *Lindsey v. Prive Corp.,* 161 F.3d 886, 893 (5th Cir. 1998). Any doubt as to whether to enter or set aside a default judgment must be resolved in favor of the defaulting party. *See id.*

*Arch Ins. Co. v. WM Masters & Assocs., Inc.*, No. 3:12-cv-2092-M, 2013 WL 145502, at *2-*3 (N.D. Tex. Jan. 14, 2013). Entry of default judgment is within the Court's discretion. *See Lindsey,* 161 F.3d at 893. The Court appropriately enters default judgment when a defendant fails to answer or otherwise refuses to obey court orders. *See Bonanza Int'l, Inc. v. Corceller,* 480 F.2d 613, 614 (5th Cir. 1973); *see also McGrady v. D'Andrea Elec., Inc.,* 434 F.2d 1000, 1001 (5th Cir. 1970).

The Court must also find a sufficient basis in the pleadings for the judgment requested. *See Burrell v. Twin Goose, LLC*, No. 3:16-cv-1079-L, 2017 WL 9471837, at *2 (N.D. Tex. Jan. 19, 2017), *report and recommendation adopted as modified*, 2017 WL 4230499 (N.D. Tex. Sept. 25, 2017) (quoting *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). Federal Rule of Civil Procedure 8(a)(2) "requires a pleading to contain a short and plain statement of the claim showing that the pleader is entitled to relief. The purpose of this requirement is to give the defendant fair notice of what the claim is and the grounds on which it rests." *Id*. (internal quotation marks omitted). "The factual allegations in the complaint need only be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)." *Id.* (internal quotation marks omitted). "[D]etailed factual allegations are not required, but the pleading must present more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted).

An entry of default "does not establish the amount of damages. After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages." *United States of Am. for Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (internal citations omitted). A court may enter default judgment against a party and determine damages without the benefit of an evidentiary hearing "where the amount claimed is a liquidated sum or one capable of mathematical calculation." *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998) (internal quotation marks omitted); *see also Arch Ins. Co.*, 2013 WL 145502, at *5.

## Analysis

The undersigned concludes that BMO has satisfied the prerequisites for entering a default judgment and recommends that the Court grant Plaintiff's request for damages of $297,147.93 but deny without prejudice BMO's request for fees and costs for failure to adequately support that request.

I.    Requirements for a Default Judgment

First as to the procedural requirements, BMO has shown that Vanover was served with summons, *see* Dkt. No. 5, and that default was entered for his failure to

appear, *see* Dkt. No. 7. BMO's attorney, Alex Brakefield, swore in an affidavit in support of the request for the clerk's entry of default that Vanover, "is not an infant [or] incompetent." Dkt. No. 6-1 at 2; FED. R. CIV. P. 55(b)(2). BMO has also provided a military service affidavit to "verify that Donald Vanover [is] not an active member of the United States military as of January 7, 2019." Dkt. No. 6-3 at 1; *see also* 50 U.S.C. §§ 3931(a),(b).

But the Court must also find a sufficient basis in the pleadings for the judgment requested. *See Burrell*, 2017 WL 9471837, at *2. BMO asserts a breach of contract claim against Vanover. *See* Dkt. No. 1 at 5. "In Texas, [t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (internal quotation marks omitted). "A breach occurs when a party fails to perform a duty required by the contract." *Id.* (internal quotation marks omitted). Under the Federal Rules of Civil Procedure Rule 8(b)(6), "[a]n allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied." FED. R. CIV. P. 8(b)(6).

Vanover here did not appear or respond to any pleadings and therefore did not contest any facts presented in Plaintiff's Complaint. *See Barnett v. A S & I, LLC*, No. 3:13-CV-2464-BN, 2014 WL 6884010, at *4 (N.D. Tex. Dec. 8, 2014) (citing *Lindsey v.*

*Prive Corp.*, 161 F.3d 886, 891 (5th Cir. 1998); *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact")).

As such, taking BMO's allegation as true, BMO has satisfied the elements of a breach of contract in showing that (1) there was a valid contract between GECC and Vanover in the form of an executed Continuing Guaranties, *see* Dkt. No. 1, Ex. D; (2) GECC fully performed under the Agreements in loaning VT, Inc. sufficient funds to purchase the required equipment, *see* Dkt. 1 at 2; (3) Vanover "default[ed] under the terms of the Guaranties for his failure to pay the amounts due under the Agreements and the Guaranties," Dkt. No. 1 at 3; and (4) GECC (and thereby BMO) sustained damages for the unpaid payments as a result of the breach amounting to $384,147.00 excluding attorneys' fees, *see* Dkt 1 at 5. BMO sufficiently pleaded a breach of contract claim.

Finally, as to the *Lindsey* factors, based on BMO's meritorious claim and Vanover's failure to hire counsel or appear in this case, "there is no evidence before the Court showing disputed issues of material fact, substantial prejudice, a good faith mistake or excusable neglect, or any reason the Court would feel obliged to set aside a default judgment." *Ocwen Loan Servicing, LLC v. Deane*, No. 4:15-cv-682-O-BP, 2017 WL 6816499, at *2 (N.D. Tex. Dec. 1, 2017), *rep. & rec. adopted*, 2018 WL 309105 (N.D. Tex. Jan. 5, 2018) (quoting *Lindsey,* 161 F.3d at 893).

The undersigned concludes that the entry of a default judgment is appropriate.

II.    <u>Damages</u>

Ordinarily, the Court does not award damages on a default judgment without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See Barnett,* 2014 WL 6884010, at *4 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). But the Court can award damages without a hearing "'where the amount claimed is a liquidated sum or one capable of mathematical calculation.'" *Leedo Cabinetry v. James Sales & Distribution, Inc*., 157 F.3d 410, 414 (5th Cir. 1998) (quoting *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)).

Here, although (a) there is a discrepancy between the relief sought in the Complaint and that sought in the Motion for Default Judgment and (b) BMO's written account of its suffered damages contains an error, the undersigned concludes that the final relief that BMO seeks is a sum capable of mathematical calculation and one that may be awarded without a hearing. *See United Artists Corp.*, 605 F.2d at 857.

First, as to the discrepancy between the Complaint and the Motion for Default Judgment, BMO's Complaint states that, because of Vanover and VT, Inc.'s default, "the principal amount owing under the Agreements after acceleration totaled no[] less than $313,960.33." Dkt. No. 1 at 4. When interest, late charges, and holding fees were added, this figure grew to $384,147.00 – exclusive of attorneys' fees. *See id*. at 4-5. But, in the Motion for Default Judgment submitted more than three months after filing the Complaint (which should have tallied up an additional three month's worth of interest at $100.39 per day), the total relief sought exclusive of attorneys' fees, was less than

the originally pleaded $384,147.00: instead, $297,147.93. *See* Dkt. No. 9 at 5.

Second, in explaining how it arrived at a damages number of $297,147.93 in its

Motion for Default Judgment, BMO reports that it

> sold all of the Collateral in a commercially reasonable manner and received the net sale proceeds thereof in the amount of $175,122.66....
>
> [Then] [u]pon receiving net proceeds from the Collateral, Plaintiff applied such proceeds first to the outstanding amount of repossession and sales expenses, next to the amount of late fees due and owning under the Agreements, next to the reduction of the principal amount under the Agreements, and then to the reduction of unpaid balance under the Extension Agreements. As a result, the principal amount due under the Agreements after Plaintiff received the net proceeds of sale for the Collateral was $200,784.22.

Dkt. 9-1 at 5. BMO explains that the interest on "all unpaid amounts" after the sale

of the Collateral was 18%. *Id*. at 4. As such, with the interest added to the $200,784.22,

"the total amount due and owing [as of February 28, 2019] not including attorneys' fees

and costs of collection, is $297,147.93." *Id*. at 5.

While BMO's final tally of $297,147.93 appears to be a correct total, a review of

its financial statements show that the Extension Agreements balances were not a part

of the $200,784.22 sub-total, and that pre-sale interest was. *See id*. For simplicity, the

analysis below inverts some of the arithmetic order.

A.    The $200,784.22 Sub-Total

The $200,784.22 sub-total that BMO details can be reached by adding together

the principal balance; late fees and accrued interest at default; interest from default

to January 18, 2016; interest from January 18, 2016, to Collateral sale date of

September 12, 2016; and period fees and expenses for all three loans.

> i.    *Principal balance*

Through Nolan Broadie's sworn affidavit, BMO attested that "[t]he principal amount due and owning upon acceleration ... [was] $313,960.33." Dkt. No. 9-1 at 4. This figure was principal balance of each of the three loans at the date of default: $46,886.95 (Account 4002) + $149,300.74 (Account 7001) + $117,772.64 (Account 6002) = $313,960.33. *See* Dkt. No. 9-8 at 2-4.

> ii.    *Late fees and accrued interest at default*

Next, "late fees due and owing under the Agreements are added ...." *See* Dkt. No. 9-1 at 5. As evidenced in Exhibit G, unpaid interest and late fees amounted to $80.00 + $306.09 = $386.09 (Account 4002), *see* Dkt. No. 9-8 at 2; $70.00 +$1,040.22 = $1,110.22 (Account 7001) *see id* at 3; and $70.00 + $758.94 =$828.94 (Account 6002), *see id*. at 4, totaling $2,325.25. This leads to a sub-total of $313,960.33 + $2,325.25 = $316,285.58.

> iii.    *Pre-collateral sale interest*

BMO includes two discrete periods of pre-collateral sale interest: (1) the period from the default date to January 18, 2016, and (2) the period from January 18, 2016, to Collateral sale date of September 12, 2016. The interest from these amounted to $1,527.61 + $5,578.72 = $7,106.33 (Account 4002), *see* Dkt. No. 9-8 at 2; $5,401.54 + $6,867.80 + $13,458.92 = $25,728.26 (Account 7001) *see id* at 3; and $3,787.75 + $16,489.20 = $20,276.95 (Account 6002), *see id*. at 4, totaling $86,669.69. This leads to a sub-total of $316,285.58 + $53,111.54 = $369,397.12.

*iv.    Period fees and expenses*

Other period fees and expenses were charged as well, as evidenced in Exhibit G. These were: $500 (Account 4002), *see* Dkt. No. 9-8 at 2; $2,018.01 (Account 7001) *see id* at 3; and $3,991.75 (Account 6002), *see id.* at 4, totaling $6,509.76. This leads to a final sub-total of $369,397.12. + $6,509.76 = $375,906.88.

*v.    Collateral sale*

The Collateral sale for each amounted to $24,615.00 (Account 4002), *see* Dkt. No. 9-8 at 2; $75,600.66 (Account 7001) *see id* at 3; and $74,907.00 (Account 6002), *see id.* at 4, totaling $175,122.66. These sales of $175,122.66 deducted from the final sub-total of $375,906.88 leads to the $200,784.22 figure.

B.    <u>The $96,363.71 Balance</u>

Unlike BMO's recitation, the $96,363.71 balance actually includes the Extension Agreements balances as well as the post-collateral sale interest for all three loans.

*i.    Extension agreements*

Two years prior to the default, as reflected in Exhibit D, VT. Inc. entered into a modification "to move [its] August 2013[,] September 2013[,] and October 2013 payment(s) to the end of [its] contract." Dkt. 9-5 at 2. Therefore, amounts of $1,431.33 (Account 4002), *see id.* at 2; $4,675.83 (Account 7001), *see id.* at 8; and $3,586.86 (Account 6002), *see id.* at 5, were deferred until the end of the contract, totaling $9,694.02. Since the default came before the end of the contract, this total is included in what was owed. *See* Dkt. 9-1 at 4 ("Pursuant to the terms of the Loan Documents, the extension fee charges in the amount of $9,6[9]4.02 were due as of the date of the

default...."). Adding these balances to the running total we get $200,784.22 + $9,694.02 = $210,478.24.

### ii.    Post-collateral sale interest

The final element of the $297,147.93 in damages that BMO seeks is the post-collateral sale interest. This interest amounted to $13,601.87 (Account 4002), *see* Dkt. No. 9-8 at 2; $43,946.96 (Account 7001) *see id* at 3; and $29,120.86 (Account 6002), *see id*. at 4, totaling $86,669.69. Adding the interest of $86,669.69 to the final sub-total of $210,478.24 results in a grand total of $297,147.93.

Accordingly, because the $297,147.93 damages number is mathematically calculable based on the record before the Court, the undersigned concludes that these damages may be awarded without a hearing.

## III.    Attorneys' Fees

BMO has also requested attorneys' fees and costs.

The undersigned recommends that the Court deny this request without prejudice.

### A.    Unadmitted Attorneys Seeking Fees

On behalf of the firm representing BMO, Aaron Chapin asserts in his declaration that BMO has incurred legal fees of $4,000.00 and costs of $587.50 for work performed on the case. *See* Dkt. 9-9 at 2. But, despite Mr. Chapin's assertion in the declaration that he is "one of the principal attorneys who has represented Plaintiff, BMO Harris Bank N.A. ... in the prosecution of this matter[,]" he has not entered an appearance in this case, has not been admitted to practice in the state of Texas or in

the Northern District of Texas, and did not seek leave to appear *pro hac vice. Id.*

28 U.S.C. Section 1654 expressly delegates to each court the power to determine its own rules for appearance of counsel. *See also* 28 U.S.C. § 2071; FED. R. CIV .P. 83. "'A federal court may wield its inherent powers over the lawyers who practice before it. This control derives from a lawyer's role as an officer of the court.'" *Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1244 (11th Cir. 2009) (quoting *Theard v. United States*, 354 U.S. 278, 277 (1957)). "Accordingly, this district has adopted local rules.... Local Rule 83.9(a) states that a licensed attorney who is not admitted to practice before the Court 'may represent a party in proceedings in this [C]ourt only by permission of the presiding judge.' N.D. TEX. R. CIV. P. 83.9(a). This Court has defined 'proceeding' as '[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment.'" *Hall v. Sw. Airlines Co.*, 282 F.R.D. 419, 419-20 (N.D. Tex. 2012) *(*citing *AFD Fund v. Sill*, 2003 WL 22466202, at *5 n. 3 (N.D. Tex. 2003), *adopted by* 2004 WL 51327 (N.D. Tex. 2004).

This district addressed the question of unadmitted attorneys seeking fees in *Humphrey v. Apfel*, No. 1:98-cv-162-C (N.D. Tex. Oct. 25, 1999) and *Sandoval v. Apfel*, 86 F. Sup.2d 601 (N.D. Tex. 2000). In *Humphrey,* a plaintiff was represented by a Texas-admitted attorney of record and an Ohio attorney with whom he had an existing relationship. *See Humphrey,* No. 1:98-cv-162-C at 3-4. Judge Koenieg found that – because (1) the plaintiff's motion only sought attorneys' fees for his Ohio-based attorney and not his Texas-admitted attorney of record and (2) plaintiff had an existing

-14-

attorney-client relationship with the Ohio attorney – the Texas attorney was merely a strawman. *See id*. at 3. As such, the *Humphrey* court denied the plaintiff's request for fees associated with the Ohio-based attorney's work on the case, holding that, where an unadmitted attorney was clearly representing a client, he or she was obligated to seek leave to appear *pro hac vice*. *See id*. 3-4. "The requirement of appearing *pro hac vice* ... ensures that the Court has a member of its bar, and under its general control, to be accountable in the event of abuse of process, disciplinary matters, and other infractions." *Id*. at 5 (citing *Sanders v. Russel*, 401 F.2d 214, 245-47 (5th Cir. 1968)).

But the *Sandoval* court stopped short of following the *Humphrey* court's denial of fees – even when the unadmitted attorney had billed more than double what the Texas attorney had. *Sandoval,* 86 F. Sup.2d at 603. Judge Fitzwater held that granting attorneys' fees to unadmitted attorneys was appropriate, if the court was persuaded that the Texas-based attorney of record was not "simply an automaton – a legal conduit." *Id*. at 607. In *Sandoval,* the plaintiff sought "compensation for 43.3 hours of attorney services, at an hourly rate of $131.25, for litigating the merits of his disability claim. These attorney services consist[ed] of 14 hours for [the Texas-based attorney of record], and 29.3 hours for [the Florida-based attorney]." *Id*. at 603. The Florida-based attorney "ha[d] not entered an appearance in th[e] case, [was] not admitted to practice in the state of Texas or in the Northern District of Texas, and did not seek leave to appear *pro hac vice*." *Id*. The *Sandoval* court held that, absent evidence of an explicit strawman, there is

nothing in this court's rules that prohibits an attorney of record who is admitted to practice in this court, whose signature on pleadings renders him subject to Fed. R. Civ. P. 11(c) sanctions, whose appearance exposes him to attorney discipline under N.D. Tex. Civ. R. 83.8(b), and who in fact functions as an attorney for his client, from contracting with another attorney, who is not admitted to practice in this court or in the state of Texas, to provide briefing services for him.

*Id.* at 606. Moreover, such conduct does not constitute the unauthorized practice of law, nor does it violate the Texas professional standards for unethical behavior adopted in Local Rule 83.8(b). *See* N.D. TEX. R. CIV. P. 83.8(b).

Here, based on the *Sandoval* court's standard, the undersigned is not persuaded that Alex Brakefield of Husch Blackwell's Dallas office is a strawman for the Chicago-based Aaron Chapin. Mr. Brakefield is the lead attorney of record and signed the Complaint, *see* Dkt. No. 1, the Request for Entry of Default, *see* Dkt. No. 6, and the Motion for Default Judgment, *see* Dkt. No. 9. Accordingly, Mr. Chapin's declaration is appropriate.

B.    <u>Reasonableness of the Attorneys' Fees</u>

In a diversity case such as this, "[s]tate law controls both the award of and the reasonableness of fees awarded." *Mathis v. Exxon Corp.*, 302 F.3d 448, 462 (5th Cir. 2002). Pursuant to Texas law, a person may recover reasonable attorneys' fees and costs when the claim involves a written contract. *See* TEX. CIV. PRAC. & REM.CODE § 38.001(8). This award is mandatory so long as there is proof of reasonable fees. *See id.*; *Mathis*, 302 F.3d at 462; *accord Park Cities Bank v. Lee*, No. 3:10-cv-1584-K, 2012 WL 3638692, at *1 (N.D. Tex. Aug. 24, 2012).

"One method of calculating reasonable attorneys' fees under section 38.001 is the

'lodestar' method, though Texas courts generally do not require parties to use the lodestar method to prove the fees requested are reasonable." *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, Civ. A. No. H-11-3061, 2015 WL 5021954, at *3 (S.D. Tex. Aug. 24, 2015). But the Texas Supreme Court has set out eight factors in determining a reasonable fee award:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
>
> (2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

Here, BMO seeks a flat legal fee of $4,000.00 and costs of $587.50. *See* Dkt. No. 9-9 at 2. Courts have found that a $4,000.00 fee would fall "well within the realm of reasonableness ... for default judgment motions in mortgage foreclosure actions." *OneWest Bank, N.A. v. Obas*, No. 14CV3238DRHGRB, 2016 WL 11201460, at *2 (E.D.N.Y. Feb. 22, 2016), *rep. & rec adopted*, 2016 WL 11191567 (E.D.N.Y. Mar. 15, 2016) (awarding $3,500.00); *see also E. Sav. Bank, FSB v. Evancie*, No. 13-CV-00878

ADS WDW, 2014 WL 1515643, at *5 (E.D.N.Y. Apr. 18, 2014) (awarding $5,687.50); *E. Sav. Bank, FSB v. Price*, No. 10-CV-4503 ADS WDW, 2013 WL 4761144, at *3 (E.D.N.Y. Sept. 3, 2013) (awarding $4,800.00).

But, absent any evidence to justify the reasonableness of the requested fee – "such as documentation indicating the number of hours expended per task, by whom, for what, and at what rate" – the undersigned cannot determine whether $4,000.00 is a reasonable award of fees. *Monarch Investments, LLC v. Aurrecoechea*, No. A-14-CA-01019-SS, 2017 WL 1034647, at *4 (W.D. Tex. Mar. 16, 2017) (denying a request for a $3,500.00 flat fee for attorneys' fees because of the plaintiff's failure to submit any evidence to support this amount, such as documentation indicating the number of hours expended per task, by whom, for what, and at what rate); *see also La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995) (denying an award of attorneys' fees based on hours submitted by an attorney where the record was "virtually devoid of any information helpful to a determination of whether or how [the attorney's] hours were spent beneficially on this litigation").

The undersigned "recognizes that [BMO] may not have submitted this information because of the flat-fee structure of this case. But regardless of a flat-fee agreement, the [undersigned] cannot [recommend] award fees that are not reasonable or necessary." *Boost Worldwide, Inc. v. Cobos*, No. EP-12-CV-0342-KC, 2012 WL 12881968, at *7 (W.D. Tex. Dec. 21, 2012); *see T-Mobile USA Inc. v. Shazia & Noushad Corp.*,No. 3:08-cv-341-O, 2009 WL 2003369, at *5 (N.D. Tex. July 10, 2009) ("The Fifth

Circuit requires that the claimants establish a reasonable hourly rate and the total numbers of hours expended on this litigation, or otherwise establish by particular methods of [billing] or calculation the requisite evidence of reasonable and necessary attorney fees.").

BMO, here, fails to provide sufficient documentation to justify the reasonableness of its fee under governing Texas law. In his declaration, Mr. Chapin states only that "he is familiar with ... the work that Husch Blackwell and its professionals have done in relation to ... the matter, and [] the amounts billed for those services." Dkt. No. 9-9 at 2.

> The fee amount is a flat fee, which was negotiated prior to filing the instant action based on the anticipated difficulty of this specific matter and the facts of the case known at the time. This fee included all work for preparing and filing the complaint in this matter, arranging service of the complaint and summons, and the preparation and filing of the motion for default judgment.

*Id.*

Comparatively, BMO has offered less detail as to its fee than the plaintiff in *Boost Worldwide, Inc.*, where the court denied the request for attorneys' fees. 2012 WL 12881968, at *6. Even when the plaintiff in *Boost Worldwide, Inc.* asserted that its $3,500.00 flat fee was reasonable based upon "the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly," listing a number of broad factors to justify the fee, the court found that "merely list[ing] these factors without explaining how they apply to this case, or "how much time was spent in preparing this case," prevented the court from being able

to conduct a lodestar analysis and determine whether the flat fee was reasonable. *Id.*

Here, even insofar as Texas law does not require a lodestar analysis, BMO has not submitted enough evidence for the Court to evaluate reasonableness under the governing Texas legal standards. Accordingly, if BMO "wishes to recover its attorneys' fees and costs, it should submit proper documentation." *Id.*

## Recommendation

For these reasons, the Court should grant in part and deny in part Plaintiff's Motion for Default Judgment [Dkt. No. 9]. Specifically, the Court should grant Plaintiff's request for damages of $297,147.93 but deny without prejudice BMO's request for fees and costs for failure to adequately support that request.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v.*

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 10, 2019

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE